5.30623 This time Mr. Daley is the appellant. I am. Good afternoon this time, Your Honors. Being pleased to court, my name is Patrick Daley. I'm here on behalf of the state in People v. Jaron Harvey. Mr. Harvey, I think, presents a rather unique case for this court. And that's the first one at least from my examination or review of Illinois case law that I've had the opportunity to examine. The application of, context, and perhaps ramifications of a proffer agreement that is commonly used in the federal court level and it's passed through multiple levels of scrutiny at the federal court level but doesn't appear to have gotten any treatment at the Illinois court level. There's really two arguments here before the court. One is whether the court's ruling that excluding the defendant's statements which are given as part of this proffer agreement or 402, Supreme Court Rule 402F, plea-related statements. The other issue is whether if they were, in fact, plea-related statements, they were waived by the defendant. I'm certainly obviously open to answering questions in regards to either of the issues, but I do want to start with issue number two. Because I think that is where we get into perhaps more groundbreaking territory in the sense of what are we, how do these work or how they're, should they, or they should even be applied in Illinois. Why do we reach, if issue two is whether defendant's statements were plea-related, defendant's voluntary participation in a proffer waived, is that the one? That's correct, Your Honor. Why would we reach that if? You wouldn't. Right. But I want to start with number two given my time limits here. Okay. I'm not obviously abandoning any argument with regards to. I would concede at least to make it clear for the court part of the rationale is that there is a substantial body of federal law, which defendant points out, which I acknowledge in my brief, which has found these to be plea-related under Federal Rule 410, which is 402F's counterpart. So although I think I do at least a yeoman's job of trying to explain that, although I shouldn't necessarily follow that or chart that path, I do want to talk about these. I'm going to interrupt you. Do you think the Friedman case adopted the federal case law? It did. It did? Explicitly, yes. It cited U.S. Robertson, and that was 410 and 402F, and sort of the two-tiered approach to whether a plea bargain takes place is subjective and an object of circumstances under a subjective interpretation, unreasonable. I'll start with that. I just don't know how we ever reached the second one, if we find that the court was correct on its decision that this was plea-related. No. You would reach the second one if the court was correct in finding it was plea-related. Our argument was that even if plea-related, the proffer agreement by its terms and by the contract it was entered into between the government, the state, and the defendant, it waived the right to enforce that testimonial privilege, as we'll call it, under 402F, if that makes sense. Okay. Okay. So we're operating right now under the assumption that let's say there is a testimonial privilege and that the court's ruling was correct without conceding the same. So then the question becomes down to now is how do these proffers work? And, you know, we – I've cited a number of Federal cases, and obviously I rely on Federal cases as persuasive authority. They're not binding on this Court. But I would start back at the beginning with the United States v. Mezzanotto, where the Supreme Court understood that, like any evidentiary privilege, a 410 evidentiary privilege can be waived by a defendant as long as it's done knowingly and voluntarily. I'll get to that in a minute because that's obviously a big part of the defendant's argument, understandably and fairly so. Courts subsequent to that have examined proffer agreements like this in that manner. In fact, when you look at the cases, you'll see that the language that's contained in this proffer agreement that the state offered to the defendant, the language was almost exactly the same. What makes this proffer agreement particularly striking, and maybe some people don't like it and some may think it's fair, but in any event, it really kind of goes beyond a little bit of the standard use of immunity agreement. It's not a matter of you give a statement that we won't use this against you later in trial, unless, of course, you testify inconsistently. But if you put on any evidence at all or any kind of defense or any kind of argument at trial that consisted with the position or the statement that you gave as part of this proffer, then the immunity agreement is vaporized and we can use your statement against you at trial. Okay? Now, in all honesty, in fairness, my first question when I read this, I'm like, wow, that's giving up a lot from the defendant. But when we talk about offering consideration for a contract here in a minute, I think hopefully I can explain why it does make some sense. So that being what we have here, it really kind of comes down to two considerations for the court to consider. One, the operation of waiver principles. Two, the operation of contract principles. Both these are, I think, form the bedrock of the application of these types of proffer agreements. The waiver principle comes down, I think, as I mentioned with Mezzanotto, and I think that we can look at Illinois law and its long history, both in federal and state Illinois law, where defendants can voluntarily and knowingly waive rights, including the right to appeal if it's done knowingly and voluntarily as part of a clean negotiation process. So although a defendant argues that, well, there's no provision in 402F which allows for this type of thing, we're not arguing that there's an exception to 402F. What we're arguing is there's a waiver of 402F. That by doing so, by agreeing to these terms, and it's being made explicit to you what the ramifications are as a result of this, even if this is plea-related, that these statements can be used against you later on. Now the contract principles. Contract principles are nothing novel in Illinois law. We've seen that come up in the principles of, like, say, the plea bargains and MSR, okay, where there's an offer, acceptance, and there's an understanding of what the terms of the deal are. As a basic rule, of course, Contracts 101 has to be an offer, an acceptance, and consideration. And there are two important things to talk about here with regards to that. There was a position that all three of these particular provisions of the contract had been satisfied. Clearly, there's an offer by the State. The offer of the State was, you give us a statement that we find credible and worthy, then we'll consider entering into plea bargain negotiations with you. From the defendant's standpoint, it perhaps breaches a door into the government's position to perhaps obtain favorable disposition or treat you from the government. Now, consideration. Consideration is something the defendant argued below. Consideration is something the defendant is arguing on appeal. There's not a lot to that consideration at the federal court level, other than the one case that I cited. But I think the consideration here has to be looked at sort of fact-specific in a way. The defendant probably understands, in entering these types of agreements, that the government has considerable leverage. This is a case where the defendant made statements implicating himself in a drive-by shooting. Counsel testified, Mr. Leeds, that he understood this, and he understood that the benefit that might be obtained from this would be to perhaps maybe work with the State that he might have as a good guy. Maybe he could lower the charges, get a more favorable disposition, et cetera. Okay? So the consideration is that essentially the government has no obligation to engage in any kind of discussion with the defendant about anything. It doesn't mean to say, shoot me an offer and we'll talk about it. Okay? It could just say, look, our case is so airtight, we're going to go to trial, and that's that. So those terms have been, I think, when you look at consideration, that aspect of it, then we have a contract. Now, once we have a contract, the burden then shifts to the defendant to establish that there's an invalid contract or it's not, you know, it should not be followed. I didn't follow your consideration. What is the consideration? The consideration is this. The defendant understanding that he's operating from a position of inferiority and knowing that the government basically holds all the cards and understanding that the corporate government has no obligation whatsoever to engage in this, by this agreement where between the defendant and the government to enter into this proffer and therefore the government saying, hey, look, you played ball with us, you know, we're going to consider whether we're going to maybe make you a favorable deal or enter into a plea negotiation or a proffer agreement for exchange for testimony, as often the case, where none existed before. So for the defendant, and I think it's... Isn't that a contingency? You make a statement and we buy it? The whole thing is built upon a contingency. Then in order to get consideration, aren't you saying there has to be the opportunity for the states? Aren't you saying the state is saying to the defendant, we'll make you an offer, we'll enter into plea discussions, is I think the correct term. Right. Plea discussions, which is exactly the argument that's being made here. There were plea discussions going on. Well, and that's why I'm sort of starting with this argument. So if we're to understand that what occurred here are actually plea negotiations or at least falls under the ambit of 402F, okay, then, if I could finish this at least, then the consideration, Your Honor, as I think you probably have noted, is that the defendant is obtaining something to which the defendant is not entitled to get. The defendant is obtaining something that the government may not even be willing to forego or to give up, which is to say, you've got a job. Please do what you want, but we don't have to offer you. I mean, the gravity of the plea negotiation process is the defendant to try to secure a more advantageous position and disposition that they would not add had they gone to trial or just pled open. Okay? So the consideration. You have the contract, so how do you get the waiver? Well, the waiver starts with the 402F. In other words, we're starting with the promise that maybe I made a mistake starting with my second issue first. But, you know, 402F, 402F is an evidentiary privilege that the defendant has. And let's assume for the sake of argument that the statements that the defendant made here are plea related and therefore are subject to the rule 402F, evidentiary privilege, which is that you can't use these statements against me at trial or any other proceeding. However, if I am in this agreement where this contract is made and by its terms the government is telling the defendant, play ball with us, we'll play ball with you, but understand that if you violate the terms of this deal, we're going to use that evidence, which would otherwise not be admissible against the defendant under rule 402F, which is a statement that he made as part of this whole thing, if we're going to call it a plea negotiation process, are being made. So the 402F evidentiary privilege is waived by the terms of the contract it's entered into. Think of this, and one thing I would probably recommend the prosecutors would do here is to make it more explicit in those terms. You have a right to a 402 evidentiary privilege here. You're going to get that out by entering this agreement, and then this is what we're going to give you. All right, it may be contingent, obviously, and that's really kind of how these work. And it's been upheld by the federal courts over and over again as being a fair process. So hopefully that clarifies a little bit about how waiver plays into this. Waiver and the contract sort of operate hand-in-hand because that's what this document operates as. I'm already way over, and I know you're going to want to jump in. I've laid out that pretty explicitly in my brief public position. So do you have anything else you want to say? All right. Thank you, Judge.  You'll have your rebuttal time after Ms. Snow. May it please the Court, counsel. I'm on behalf of Jaron Harvey, the appellee. Your Honors, a negotiation that does not lead to an offer does not cease to be a negotiation. As a whole, the State's arguments overlook Illinois Supreme Court Rule 402, which was designed to protect those like 19-year-old Jaron, to protect against the chilling effect of a defendant creating evidence of his own guilt in a negotiations process, where the State clearly has the upper hand, to protect against the devastatingly prejudicial effect of the introduction of plea-related statements at a trial for the accused, and to protect and allow for the continued function and operation of our criminal justice system, which is overwhelmingly a system consisting of guilty pleas. Let me stop you for just a moment because my biggest concern with this is there's a proper letter. The proper letter sets out exactly what is expected, what's promised, what's not promised, what could and could not happen. Each paragraph is initialed by your client and his attorney and it's signed. Why do we go, I mean, how am I convinced that he didn't know what he was doing? How am I convinced that he, it's not a per se person, it's not an interrogation at 2 a.m. in the jail cell. It's with counsel, evidence up front, here's what's going to happen, here's what we expect, here's what he might expect, and he chose to do it. Yes, Your Honor. So, Jaron had Mr. Leeds, who testified that he was a 42-year veteran, he's worked in state courts and federal courts, that he has seen proffers like this numerous times. But the problem is that this 42-year veteran attorney did not understand the proffer agreement as the way the state understood it. So Mr. Leeds advised, and there's multiple arguments or repeated arguments that Mr. Leeds talked to Jaron, went to visit Jaron at the jail, had numerous conversations with Jaron, except they were incorrect or incomplete advice that the attorney gave. So Mr. Leeds testified at the hearing, stating that when Ms. McElroy, the St. Clair public defender, she asked, did you know that by having Jaron sign this, that we cannot argue that he's not guilty, that we cannot argue in opening statements, or even stating in opening statements that we cannot make any type of defense theory against, that's inconsistent with his statement that was given to the police. And Mr. Leeds says that that's not how I interpreted it. That's not how I understood this. And if Mr. Leeds, the 42-year veteran attorney, did not know that that's what the state meant, that that's what the proffer agreement meant, then how would Jaron know that? So Jaron in the signature says that he is signing this after advice given by counsel, that after the advice he still wanted to pursue negotiations. So if that's the case, and the attorney did not understand the proffer, if there were no meetings of the minds between the state's attorney and the attorney for Jaron, I don't know how there could have been an understanding that when Jaron signed this, that's what he was doing, that he was giving up his right to a defense, that if the attorney even went slightly inconsistent or made a statement or on cross-examination of a state's witness, if someone said anything that was inconsistent to what Jaron told the state's attorney, that it would trigger the proffer statement that he engaged in proffer negotiations or his proffer agreement. That's not what Jaron understood. And according to Mr. Leeds' testimony, he did not advise Jaron of that. And that's what the state's coming back with, saying if he, not just him testifying, and Mr. Leeds does testify to that, saying I told him that if he testifies inconsistently at trial, and he can, he can testify at trial, but if it's inconsistent to his proffer statement, then it will trigger. And I think this Court looks at the trial court's written order. It tracks exactly with what Mr. Leeds told Jaron, the advice that was given. So it's C83. It's admissible for impeachment purposes in the event that defendant's testimony at trial is inconsistent with the statements at the December 13, 2020, proffer agreement. So, again, the Court is following what Attorney Leeds said. So if Jaron is testifying at trial and it's inconsistent, then it will trigger. And that's the other thing. The state has this ability. The state can at trial impeach Jaron with the statement because that's what the court's order says. The state also has a three-and-a-half, four-hour interrogation video that was recorded. It's video recorded. The state has that. So it's not like the state doesn't have recourse if they cannot use the proffer statement or the mention of the agreement in its case in chief. So, again, it could come out as impeachment. The state can use the interrogation video, the three-, four-hour interrogation video, which Attorney Leeds has stated was kind of the crux, like was the crucifix in this case, saying Jaron's worst enemy in this case or the worst evidence against Jaron was Jaron himself. The three-and-a-half hour, the four-hour interrogation video that he made were the admissions that caused him to enter into these proffer agreements, according to Attorney Leeds. I understand under the Freedman case that we need to look at your client's subjective intent or understanding, I should say. But does the defendant have to offer to plead guilty under Freedman? Under Freedman. Or under the federal case law. So, of course, Your Honor, if a defendant agrees to plead guilty, then that would be a clean-cut case. But here we have Attorney Leeds who testified that he told Jaron, you have a big risk going to trial. If you go to trial, you'll be convicted. So we have that, which means. . . But, I mean, as part of this proffer process, does the defendant have to offer to plead guilty? Because in this case, your client did not testify. We don't know what his subjective expectations were. We do know from Attorney Leeds' testimony, because Attorney Leeds, he testifies that he would not have had a client take an offer or accept a plea or enter into negotiations if he didn't think that the client needed to. So Attorney Leeds testifies that I am working to get the best outcome for the client. If I knew that the client should not have pled guilty, then I would not have engaged in this type of, I guess, representation. But in this case, we have that, and we have the trial court pointing out after observing the evidence, after observing the proffer letter, Jaron's written acknowledgment and signed acknowledgment, and Mr. Leeds' testimony that this proffer conversation wouldn't have taken place but for the incentive to have a plea, to get an offer from the state, and to resolve the case in a way that's favorable to the defendant. And Mr. Leeds testifies to that, saying that his job, as he does in all of his cases, would be to get the best outcome for his client. And in this case, knowing that going to trial is a big risk, knowing that he would be convicted if he went to trial based on that three- to four-hour video recorded interrogation video, this was the best that Leeds believed in this case because of what was in the case. And that's why we have to look at the circumstances as well in this case, where we have, again, Leeds not advising him, not telling him exactly what the state was thinking, where there was no meeting of the minds in the sense of that proffer agreement contract. And then we have Jared, who subjectively we can – and even if there's no subjective, clear-cut, I'm going to plead guilty, we can look at the objective circumstances. And that's what the test says. It's either the subjective belief or we can look at the objective circumstances that allows for this interpretation of the defendant's subjective understanding or, you know, the fact that he was entering into negotiations that he would have pled. And I'm sorry, but to that point, and to follow up on Justice Cates, I mean, page four, and you address it in your brief, but page four of this offer letter, about halfway through that paragraph, the acknowledgement and agreement of Mr. Harvey, I nevertheless want to pursue negotiations with the St. Clair County State's Attorney's Office, and I hereby voluntarily and intentionally waive such rights. I mean, to me, it says right there he wants to pursue negotiations. That's correct. And that's why this is plea-related, plea negotiations. And again, but the problem here is it says before that, and the attorney has explained the terms and conditions to me, except the attorney, as he testified, did not completely and accurately convey the terms to the client. No, I understand that. And I mention that because it seems to be, as the trial court, I think, brought out vague and convoluted and ambiguous. It's been a long morning. If these aren't supposed to be plea negotiation documents, but then right there in the acknowledgements, it says I want to pursue negotiations. I mean, that's confusing and ambiguous. That's correct. And, Your Honor, the paragraph, the fifth paragraph, or number five, the fifth part, says that a proffer is many times a preliminary step to entering into a plea incorporation agreement. So everything in this case started, let me see my time's up, but everything in this case starting with his initial interrogation, the fact that he wasn't represented, he was in a police station, versus when he made the proffer agreement, which took years, not years, months, for the attorney to talk to the state's attorney to get the proffer statement to be given without a reported statement. It shows the contrast between the two, where he initially wasn't engaged in any type of plea negotiations, versus when he was with the proffer, with his attorney, with the state's attorney, and the detective. Unless this court has any other questions. We ask this court to affirm the trial court's rulings in this case. Mr. Daly, do you have one? Thank you. I want to start with Justice Barbera's question and the answer to that, and then switch to Justice Bowie's question as well. So I think that the question, I think the response, both of which are, I think, fair and accurate representations of the record, raises perhaps a broader question, is that, you know, was there ever really a challenge made here to the voluntary anointing aspect of this proffer agreement? The defendant's motion filed by new counsel sort of danced around it in the text of it, but when we got to the hearing itself, there was really no exploration. As Justice Cates noted, the defendant did not testify. And there was not really a specific argument directed towards knowing the voluntariness. And the reason I kind of went through some of the process, if you will, of the contract, is because once you have a contract and you've met the elements, then the burden shifts to the person or party challenging the contract to show that it was not done properly or is not a proper contract, among which is, as the defendant argues, a meeting of the minds and mutual assent or some of those principles that apply here. But we never really got to that question here. The court didn't address the state's waiver proffer argument at all in its ruling and simply stopped at the 402F and said, you know, QED, even though there was a lot of argument, that was devoted to as well as case law. Some of them, much of which I talk about here for this court, were presented to the court and didn't seem to get any traction. I don't think there's a motion to reconsider if that question is going to come up. So that's where we are with this. So while the defendant does, I think, fairly extract certain comments made by Mr. Leeds, that in the arm's-length consideration, they say, well, maybe there's a question here about how or what way was this explained to the defendant. But conversely, we have a situation where we have a number of paragraphs of this. We've specified Owen Oregon. I went to him. I visited him. I went through this whole thing with him. We've initialed each saying, presumably at least to the contrary, that he followed through on doing what he told the court he did under oath. All right. So at best we have perhaps a question remaining about whether there was knowing involuntary. But then we fall back as, well, who's supposed to make that argument? I'm not obligated to rebut it when it's not actually made. I try to anyway since it's come up here on appeal. But it wasn't raised below. And so that's why if the court wants to remand it for some reason for that, if it gets to that point, understandably enough. But I would be resistant to it only because I feel like it's something that could have been dealt with at the trial court level once we have established that there's a contract. The bad thing is we don't even know either because the court never got to it. So there's the conundrum. Justice Bowie's question I do want to address as well. So it is a fair point, I think, which makes mention of the I want to mention of the plea negotiation. But, again, we have to understand that we are looking at subjective and then also objective circumstances. I agree with Justice Gates' question if I were to turn it into a statement that the defendant testified. So we don't really know what his mind says. And I don't agree with the defendant's casting counsel's statements as exhibiting that was his mind. But the rudiments of a plea negotiation still require a bilateral understanding of entering into a plea negotiation. The case law has said that the defendant's going to offer something, the state's willing to entertain it, and will engage in that process. And I'm looking just now at the statement in isolation basically says, I want to enter into plea negotiations with you. Would it be a plea negotiation, Your Honor, under the circumstances where the state said, talk to my aunt, I don't want to listen to what you have to say to me? Of course not. It's not a plea negotiation. If the defendant works out all these terrible things that are incriminatory, he doesn't get to call it a plea negotiation simply because he had a hope of entering into doing so. Okay? Therefore, we get into the objective circumstances. The defendant says … It doesn't have to be a negotiation. It can be a discussion. It can be a discussion. But at this point, the proffer is nothing more than you play ball and maybe we'll have a discussion. But there's not a discussion. And it's a paragraph that says we're under no obligation to offer a plea. Right. It was made very clear, and I think Lee himself testified that he understood that we are, that the government's essentially going to take this information and then decide what it wants to do with it or nothing at all. Okay. And I think that that's what, that's really sort of the, although we split hairs sometimes and make these determinations, the point I want to emphasize is I don't think that his signing that generates something that doesn't, none of us will have to have some more basis in record to satisfy the strictures of a plea negotiation. Clarence, any questions? Well, I think you kind of alluded in your initial argument that, in theory, this might be a good thing, but maybe in this practice it is lacking a tad bit. And maybe I'm not putting words in your mouth, but I kind of took that as a statement you made that this isn't a perfect. It's a good idea to be executed a little bit differently perhaps. I don't see it as hunting the ball in this case. I do think that we're sort of entering uncharted territory with these proffers outside of the federal court system to determine how they work within Illinois's parameters and 402F and waivers are the same. I think we can at least come to the agreement that 402 is something that can be waived, and the question comes whether this is a proper waiver and can be employed to do so under the totality of the circumstances. But these are not issues this Court will ever reach because the Court simply sort of characterized it as a 402F discussion, which is why I do that as well, that we're not going to concede that it actually is. But if it is, then there should be provision at least that you can waive those evidentiary privileges, and that was done so here. Thank you, Your Honor. I appreciate your time. Thank you. Okay. That concludes the arguments in 523-0623. This matter will be taken under advisement. We'll issue an order in due course. Thank you.